**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **DAWSON FARMS, LLC** | * | **CIVIL ACTION NO. 06-0737** |
| **VERSUS** | * | **JUDGE JAMES** |
| **BASF CORPORATION AND HELENA CHEMICAL COMPANY** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an opposed motion for summary judgment filed by defendant Helena Chemical Company ("Helena") (Doc. #90).  Helena contends that a 2002 contract precludes plaintiff Dawson Farms, L.L.C. ("Dawson Farms") from recovering the damages it seeks from Helena.  Dawson Farms disagrees, arguing that subsequent agreements between the parties are controlling.  (Doc. #106). For reasons stated below, it is recommended that Helena's motion be **GRANTED**, and that plaintiff's claims against Helena Chemical Company be Dismissed with Prejudice at Plaintiff's .

### I

The relevant facts are not in dispute.  Dawson Farms has purchased herbicide from Helena numerous times between 2003 and 2007.  In addition to selling the herbicide, Helena has applied the herbicide for Dawson Farms.  Dawson Farms alleges that the Outlook herbicide sold and applied by Helena for the 2005 crop year damaged its 2005 crop of sweet potatoes.  Consequently, Dawson Farms has filed suit against both Helena and BASF Corporation, the manufacturer of the herbicide.  The effect of several contracts between Helena and Dawson Farms, as well as another document, is in dispute.  Specifically, the parties disagree on the effect the documents have on Dawson Farms' ability to recover the damages it seeks from Helena.

1

In 2002, Dawson Farms and Helena entered into a "Credit Sales and Services Agreement" (hereinafter the "2002 Agreement").  Under the contract, Dawson Farms agrees to numerous terms and conditions "in consideration of being extended credit, now or in the future, for purchases of products or services from Helena."  (Doc. #106-1-A).  One such condition is the "Limitations of Warranty, Liability and Remedies" clause.  The clause expressly bars the recovery of consequential damages from Helena and waives any right to sue Helena for negligence, breach of warranty, strict liability, or other causes of action.[1]  A second term of the 2002 Agreement restricts the parties' ability to waive or vary the terms of the contract.  The clause states that "the foregoing conditions of sale and limitations of warranty, liability, and remedies may be varied or waived only by agreement in writing signed by a duly authorized representative of Helena."  *Id.* Finally, the 2002 Agreement also contains a choice of law clause, indicating that the agreement

---

[1] The full text of the clause states (in all-capital letters in the original):

Helena makes no warranty or representation of any kind, express or implied, concerning the above goods or the providing of services except the express warranties set forth above, **and hereby disclaims to the fullest extent permitted by applicable law any implied warranty of merchantability or fitness of the goods or services for any particular purpose** or warranty against infringement, and no such warranties shall be implied by law or otherwise.

The exclusive remedy against Helena for any cause of action relating to any recommendation, sale, handling, use or performance of the above goods or the providing of services is a claim for damages [to be resolved by binding arbitration] and in no event shall damages or any other recovery of any kind against Helena exceed the price for the specified goods or services which cause the alleged loss, damage, injury, or other claim. Helena shall not be liable and any and all claims against Helena are waived, for special, indirect, incidental, or consequential damages or expenses, of any nature, including but not limited to, loss of profits or income, and crop or property loss or damage, whether or not based on Helena's negligence, breach of warranty, strict liability in tort or any other cause of action.

(Doc. #106-1-A).

"shall be governed by Tennessee law."  *Id.*

Beginning in 2003 and continuing once a year, Helena and Dawson Farms entered into debt subordination agreements (hereinafter the "Subordination Agreements").  The agreements state, in relevant part, that

> [i]n consideration of the monies currently owed to Helena by [Dawson Farms] and in consideration of the future goods and services to be provided by Helena to [Dawson Farms] . . . Helena will be paid in preference and priority to the indebtedness owed to the Dawsons . . . by [Dawson Farms].[2]

(Doc. #106-1-B – F).  None of the Subordination Agreements references the 2002 Agreement.  The Subordination Agreements contain choice of law provisions requiring the agreements to "be governed by the laws of the State of Louisiana."  *Id.*

In addition to the Subordination Agreements, Helena has issued separate delivery tickets and invoices for its transactions with Dawson Farms every year following 2002.  The 2005 documents (hereinafter the "2005 Invoice and Delivery Ticket"), for example, list the quantities, descriptions, and prices of Dawson Farms' purchases from Helena.  (Doc. #106-1-M).  The 2005 Invoice and Delivery Ticket also indicates that "the purchaser agrees to be bound by all of the terms and conditions of sale set forth in this invoice, including those on the reverse side of this invoice."  *Id.*  On the reverse side of the 2005 Invoice and Delivery Ticket is a clause entitled "LIMITED WARRANTY AND LIMITATION OF LIABILITY AND REMEDIES" (hereinafter "Waiver Clause").  *Id.* The Waiver Clause limits the warranty, liability, and remedies in a fashion very similar to the 2002 Agreement.[3]  *Id.*  Like the Subordination Agreements, the 2005 Invoice

_____

[2] The precise language of the Subordination Agreements differs slightly from year to year.

[3]  The full text of the Waiver Clause states:

Seller warrants title and that all goods sold hereunder conform to the label description.  If fertilizer is sold hereunder in bulk and thus has no label, Seller

and Delivery Ticket does not reference the 2002 Agreement.  The 2005 Invoice and Delivery

Ticket does not contain a choice of law provision.  *Id.*  Dawson Farms concedes that the Waiver

Clause "was not signed by Dawson Farms," (Doc. #106**,** p.10), and "was not brought to Dawson

Farms's attention."  (Doc. #106-2, ¶6).

## II

Summary judgment is appropriate when the evidence before the Court shows that there is

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  FED. R. CIV. P. 56(b).  While the facts are to be reviewed with all inferences drawn in favor

of the non-moving party, factual controversies are resolved in favor of the non-movant only when

there is an actual controversy.  That is, when both parties have submitted evidence of

---

warrants that such fertilizer conforms to the analysis thereof either shown hereon or
on another writing(s) delivered to Buyer.   There is no other warranty or
representation, of any kind, express or implied, concerning the goods, INCLUDING
NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS OF THE
GOODS FOR ANY PARTICULAR PURPOSE AND NO SUCH WARRANTIES
SHALL BE IMPLIED BY LAW.

No liability hereunder shall be asserted unless any loss, damage, injury or other claim
is reported to the Seller in writing within thirty (30) days after discovery, and the
failure to give notice of any claim within such period shall constitute an absolute and
unconditional waiver of such claim.

THE EXCLUSIVE REMEDY AGAINST THE SELLER FOR ANY CAUSE OF
ACTION IS A CLAIM FOR DAMAGES AND IN NO EVENT SHALL DAMAGES
OR ANY OTHER RECOVERY OF ANY KIND AGAINST SELLER EXCEED
THE PRICE OF THE SPECIFIC GOODS WHICH CAUSED THE ALLEGED
LOSS, DAMAGE, INJURY OR OTHER CLAIM. SELLER SHALL NOT BE
LIABLE, AND ANY AND ALL CLAIMS AGAINST SELLER ARE WAIVED,
FOR SPECIAL, DIRECT OR CONSEQUENTIAL DAMAGES OR EXPENSES OF
ANY NATURE, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS OR
INCOME, CROP OR PROPERTY LOSS OR DAMAGE, LABOR CHARGES AND
FREIGHT CHARGES, WHETHER OR NOT BASED ON THE SELLER'S
NEGLIGENCE, BREACH OF WARRANTY, STRICT LIABILITY AND TORT
OR ANY OTHER CAUSE OF ACTION.

contradictory facts.  *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995).  No genuine issue of material fact exists based on the summary judgment evidence if no reasonable juror could find in favor of the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party moving for summary judgment bears the burden of "informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Washburn v. Harvey*, 504 F.3d 505, 507 (5th Cir. 2007).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  "In this circumstance, if the non-moving party can point to nothing in the record supporting its claim, summary judgment is appropriate."  *Id.*

Accordingly, this court must consider several questions: (A) Do the terms of the 2002 Agreement apply to the instant dispute? (B) If so, do any or all of the Subordination Agreements constitute a novation of the 2002 Agreement?  (C) Alternatively, does the 2005 Invoice and Delivery Ticket constitute a novation or modification of the 2002 Agreement?

### A.  The 2002 Agreement

Due to the contract's choice of law clause, Tennessee law controls this court's interpretation of the 2002 Agreement.[4]  Under Tennessee law, "[t]he interpretation of a contract is

---

[4] Louisiana law generally allows choice of law provisions.  LA. CIV. CODE ANN. art 3540 ("issues of conventional obligations are governed by the law  expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.").

a matter of law." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).  Consequently, "[q]uestions of contract interpretation . . . are especially well-suited for resolution by summary judgment." *Ross Prods. Div. Abbott Labs. v. Tennessee*, 2007 Tenn. App. LEXIS 752, at *7 (Tenn. App. Dec. 5, 2007).  "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole, and to give effect to that intention consistent with legal principles." *Id.* at *7-8.  "The intent of the parties is presumed to be embodied and expressed in the contract as written." *Id.* at *8.  When "a contractual clause, read in the proper context, unambiguously mandates a particular result, [courts should] not disturb that result." *Wager v. Life Care Ctrs. of Am., Inc.*, 2007 Tenn. App. LEXIS 743, at *27 (Tenn. App. Nov. 30, 2007).

The 2002 Agreement is unambiguous and therefore may be interpreted as a matter of law.[5] The undersigned concludes the 2002 Agreement applies to this dispute for three reasons.  First, the opening clause of the contract states that the supporting consideration is credit that is "being extended . . . now or in the future, for purchases of products or services from Helena."  (Doc. #106-1-A).  The instant suit arises from the purchase of products and services from Helena after the 2002 Agreement was signed.  Second, the "Limitations of Warranty, Liability and Remedies" clause in the 2002 Agreement applies to "any cause of action [against Helena] relating to any recommendation, sale, handling, use or performance" and states that "any and all claims against Helena are waived." *Id.*  The instant case is brought against Helena and arises from the sale and performance of an allegedly defective herbicide.  Finally, the clause restricting waiver or variance

---

[5] Dawson Farms does not contend that the 2002 Agreement is ambiguous, opting instead to argue that it has been novated.  Neither does Dawson Farms contest that the provisions limiting Helena's liability are valid and enforceable under Tennessee law (or Louisiana public policy).  *See* LA. CIV. CODE ANN. art 3540 (Tennessee law could not control if it would lead to a result that violates Louisiana's public policy.).

also supports the conclusion that the 2002 Agreement controls.  The clause states that waiver or variance can be achieved "only by agreement in writing signed by a duly authorized representative of Helena."  *Id.*  Thus, the text does not communicate an intent of the parties for the 2002 Agreement to automatically terminate at some point before 2005.  As a result, the undersigned concludes, as a matter of law, that the 2002 Agreement unambiguously applies to the instant dispute.

Moreover, it is equally clear that the 2002 Agreement, if read in isolation, would preclude Dawson Farms from recovering the damages it seeks from Helena.  It is also undisputed that its provisions are enforceable under Tennessee law.  The "Limitations of Warranty, Liability and Remedies" clause bars recovery for "consequential damages . . . of any nature" regardless of "Helena's negligence, breach of warranty, strict liability in tort or any other cause of action."  *Id.* All of the damages sought by Dawson Farms are consequential damages.  (*See* Doc. #1 (alleging "lost harvest yields, lost opportunity damages, expenses incurred as a result of the additional harvest time, interest, and costs.")).  Consequently, the 2002 Agreement should be interpreted to preclude Dawson Farms from obtaining the recovery it seeks unless there is evidence that the relevant provisions in the 2002 Agreement are no longer in effect.

### B.  The Subordination Agreements

Dawson Farms argues that the 2002 Agreement is no longer in effect.  In support, Dawson Farms contends that the Subordination Agreements the parties entered into each year from 2003 through 2007 constituted novations of the 2002 Agreement.[6]  Dawson Farms argues that, as a

---

[6] While the undersigned is treating Dawson Farms' argument as an allegation of novation, Dawson Farms' brief is not clear as to the theory being advocated.  *See* Doc. #106.  In the brief filed as opposition to the instant motion, Dawson Farms never uses the word "novate" or "novation."  *See* Doc. #106.  Instead, Dawson Farms argues that the 2002 Agreement was "superseded."  *Id.* at p.6.  Each of the cases Dawson Farms cites in support, however, deals with

result of the novation, the 2002 Agreement is no longer in effect.

Novation is the extinguishment of an existing obligation by the substitution of a new one." LA. CIV. CODE ANN. art. 1879. "The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed." LA. CIV. CODE ANN. art. 1880. "Novation takes place when, *by agreement of the parties*, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation." LA. CIV. CODE ANN. art. 1881 (emphasis added). Louisiana courts have required, before finding novation, that the parties either "entered into an agreement to novate or expressly declared their intention to novate." *Lowry v. Mills*, 682 So. 2d 802, 805 (La. Ct. App. 1996). "Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing . . . or the giving of new securities for the performance of an existing obligation are examples of such a modification." LA. CIV. CODE ANN. art. 1881.

Summary judgment can be inappropriate for resolving the issue of novation, as often it "requires the court to weigh conflicting evidence." *LaGrange v. Dynamic Indus.*, 875 So. 2d 1059, 1062 (La. Ct. App. 2004). This is true because "the intent of the parties is the most important factor in deciding whether a novation has occurred, and summary judgment is usually not appropriate in cases requiring judicial determination of subjective facts, such as . . . intent." *Id.* (citing LA. CIV. CODE ANN. art. 966). On the other hand, the interpretation of a contract –

---

the subject of novation. *E.g. id.* at 9 (citing *Scott v. Bank of Coushatta*, 512 So. 2d 356, 360 (La. 1987); *Schillace v. Channell Shopping P'ship*, 623 So. 2d 45, 47 (La. Ct. App. 1993); *Huval Tractor, Inc. v. Journet*, 413 So. 2d 978, 981 (La. Ct. App. 1982)). In addition, Dawson Farms argues that the Subordination Agreements are "evidence [of] Helena's *revocation* of the 2002 Agreement *and substitution* of new [a]greements." (Doc. #106, p.7 (emphasis added)). The undersigned interprets this language as functionally arguing novation.

which is the determination of the common intent of the parties – is a matter of law.  LA. CIV. CODE ANN. art 2045*; Stine v. Marathon Oil Co.*, 976 F.2d 254, 260 (5th Cir. 1992).  Where "the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  LA. CIV. CODE ANN. art. 2046; *Mabey v. Dixie Elec. Membership. Corp.*, 2007 U.S. App. LEXIS 18787, at *15 (5th Cir. Aug. 7, 2007).  In such cases, summary judgment is appropriate.  *Id.*

As evidence in support of its novation argument, Dawson Farms proffers the Subordination Agreements themselves, as well as an affidavit of Lev Dawson, the majority owner of Dawson Farms.  Dawson states that "[i]t was Dawson Farms's understanding and intent that the agreements entered into annually after 2002 controlled the parties' contractual relationship and that the 2002 Agreement was of no further force or effect."  (Doc. #106-2).

While there may be evidence that Dawson Farms intended novation, the evidence does not support the conclusion that Helena intended novation.  Indeed, nothing in the text of the Subordination Agreements supports such a finding.  The terms of the Subordination Agreements are clear; Dawson Farms is to pay Helena "in preference and priority to the indebtedness owed to the Dawsons."  (Doc. #106-1-D).  Dawson Farms agreed to the terms "[i]n consideration of the monies currently owed to Helena . . . and in consideration of the future goods and services to be provided by Helena."  *Id.*  The Subordination Agreements do not reference the 2002 Agreement and do not purport to extinguish a debt or substitute obligations.  Consequently, there is no competent evidence that Helena clearly and unequivocally intended a novation.  As a result, the Subordination Agreements do not affect the applicability of the 2002 Agreement.

### C.  2005 Invoice and Delivery Ticket

Dawson Farms argues in the alternative that the 2005 Invoice and Delivery Ticket (in

combination with Dawson Farms' acceptance of the herbicide and Helena's services) "created a new set of obligations that applied to the sale and services Helena provided." (Doc. #106, p.10 (citing *Stupp Corp. v. Con-Plex*, 344 So. 2d 394, 396 (La. Ct. App. 1977)).  Dawson Farms argues that, as a result, the Waiver Clause in the 2005 Invoice and Delivery Ticket should control, rather than the  "Limitations of Warranty, Liability and Remedies" clause in the 2002 Agreement.

The parties in this matter are bound by the 2002 Agreement to the extent that it is still in effect. *See* LA. CIV. CODE ANN. art. 1983 ("Contracts have the effect of law for the parties  and may be dissolved only through consent of the parties or on grounds provided by law.").  While Dawson Farms argues that the 2005 Invoice and Delivery Ticket "created a new agreement" it is not clear whether Dawson Farms is arguing a theory of novation or modification.  Consequently, the undersigned will consider the merits of both arguments.

To the extent that Dawson Farms is arguing that the 2005 Invoice and Delivery Ticket constitutes a novation, the argument fails for similar reasons as stated in the preceding section. The 2005 Invoice and Delivery Ticket does not reference the 2002 Agreement.  Nor does it purport to purport to extinguish a debt or substitute obligations.  Moreover, the 2005 Invoice and Delivery Ticket is not signed by an authorized representative of Helena, which the 2002 Agreement expressly requires for variance or waiver of its terms.  (Doc. #106-1-A).  Hence, there is no competent evidence that Helena clearly and unequivocally intended for the 2005 Invoice and Delivery Ticket to constitute a novation.

Dawson Farms' argument that the 2005 Invoice and Delivery Ticket constitutes a modification also fails.  Under Louisiana law,[7] "[t]he party asserting modification of an obligation

---

[7] Dawson Farms cites Louisiana law in support of this argument.  (Doc. #106, p.10-13)  In the section of its reply brief that responds to this argument, Helena does not contest the reliance on Louisiana law and does not cite the law of any other state.  Furthermore, the

must prove by a preponderance of the evidence facts or acts giving rise to the modification." *L & A Contracting Co. v. Ram Indus. Coatings Inc.*, 762 So. 2d 1223, 1233 (La. Ct. App. 2000) (citing LA. CIV. CODE ANN. art. 1831). "A modification will, however, not be effected when there is no meeting of the minds regarding the modification, such as when the parties did not discuss or agree to the change." *Soc'y of the Roman Catholic Church v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 738 (5th Cir. 1997). Indeed, once a "contract is confected, one party cannot unilaterally modify its terms." *River Oaks, Inc. v. Blue Cross of La./La. Health Serv. & Indem. Co.*, 595 So. 2d 785, 787 (La. Ct. App. 1992). Dawson Farms concedes that the Waiver Clause "was not signed by Dawson Farms," (Doc. #106, p.10), and "was not brought to Dawson Farms's attention." (Doc. #106-2, ¶6). Since Dawson Farms concedes that it was not even aware of the waiver, no reasonable juror could conclude that there was a meeting of the minds, which is required for modification.

For these reasons, the undersigned recommends that the court **GRANT** Helena's motion for summary judgment. In addition, the undersigned recommends that Helena's request for costs be **GRANTED** pursuant to FED. R. CIV. P. 54(d).

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten**

---

Tennessee law governing contract modification is virtually the same as Louisiana's. *E.g. Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 338 (Tenn. 2005) ("Modification of an existing contract cannot be accomplished by the unilateral action of one of the parties. There must be the same mutuality of assent and meeting of minds as required to make a contract."); *E & A Ne. L.P. v. Music City Record Distribs.*, 2007 Tenn. App. LEXIS 145 (Tenn. App. Mar. 21, 2007) ("the burden rests on the defendant to demonstrate that an existing contract has been modified by mutual assent.").

**(10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

      **A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      **THUS DONE AND SIGNED** this 18th day of February, 2008, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE