RECEIVED
IN MONROE, LA
MAY 1 3 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

DAWSON FARMS, LLC                    CIVIL ACTION NO. 06-0737

VERSUS                               JUDGE ROBERT G. JAMES

BASF CORP., ET AL.                   MAG.  JUDGE KAREN L. HAYES

### RULING

Before the Court is Defendant BASF Corporation's ("BASF") Motion for Summary

Judgment [Doc. No. 121].

For the reasons stated below, BASF's motion is GRANTED as to Dawson's Negligence,

Negligent Misrepresentation, and Louisiana Unfair Trade Practices Act claims, and DENIED as

to Dawson's redhibition, breach of warranty, and design defect claims.

## I.    BACKGROUND

Dawson grows sweet potatoes in Delhi, Louisiana.  In 2005, BASF began marketing the

herbicide Outlook to Louisiana sweet potato growers.  BASF had previously marketed Outlook as

an herbicide to be used on corn, but when the corn market started shrinking, BASF started

marketing Outlook to sweet potato growers.

Prior to 2005, Dawson and other Louisiana sweet potato growers controlled weeds by

applying an herbicide called Dual, also manufactured by BASF.  When BASF started marketing

Outlook for use on sweet potatoes in Louisiana, Dual was no longer labeled for use on

Louisiana's sweet potatoes.

During the 2005 growing season, Dawson treated its sweet potatoes with Outlook.

1

Dawson alleges that Outlook caused severe damage to its crops by producing stunted and malformed sweet potatoes.  Dawson claims that damage to sweet potato crops occurred throughout Louisiana and Mississippi and that the damage from Outlook was more severe than that which would have been expected with Dual.

After the 2005 growing season, Outlook was no longer marketed for use on sweet potatoes.  According to Dawson, internal studies conducted by BASF prior to 2005 crop year portended that Outlook would damage sweet potatoes.

Dawson brought claims against BASF for redhibition, breach of contract, negligence, and negligent misrepresentation.  Dawson has also alleged that BASF is liable under the Louisiana Unfair Trade Practices Act ("LUTPA") and the Louisiana Products Liability Act ("LPLA").  BASF has moved for summary judgment on all claims.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id.

2

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

**B.     Negligence, Negligent Misrepresentation, and LUTPA Claims.**

Although Dawson originally raised claims against BASF for negligence and negligent misrepresentation and under the LUTPA, it has conceded that those claims should be dismissed on summary judgment because the claims are preempted by the LPLA and the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, et seq. See [Doc. No. 134-1 at 1]. Therefore, the Court GRANTS BASF's Motion for Summary Judgment on these claims.

**C.     Redhibition Claim**

In its Complaint, Dawson claims BASF is liable under Louisiana Civil Code Article 2520, et. seq., under which a seller implicitly warrants that there are no "redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520. "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had [it] known of the defect." Id. The buyer may rescind the sale when there is a redhibitory defect. Id. A defect is also redhibitory, entitling the buyer to recover quanti minoris damages for a reduction in the purchase price, when, without rendering the product totally useless, the defect diminishes the product's utility or its value so that it must be presumed that a buyer would still have purchased the product but for a lesser price. Jessup v. Ketchings, 482 F.3d 336, 342 (5th Cir. 2007) (citing La. Civ. Code art. 2520).

3

Defects that were known to the buyer at the time of the sale, or defects that should have been discovered through a simple inspection, are excluded from the seller's legal warranty. Id. (citing La. Civ. Code art. 2521)); Amend v. McCabe, 95-0316 (La. 12/1/95); 664 So.2d 1183, 1188 (La.1995)).

### 1. Was Outlook defective under Article 2520?

According to Dawson, Outlook is "defective" under Article 2520 because it was not "fit for its ordinary or intended use." See [Doc. No. 134-1 at 14] ("Whether a product is 'defective' is ultimately a determination of whether the product was fit for its ordinary or intended use."); see also [Doc. No. 134-1 at 11, 14]("[t]he abstract possibility of some damage is not the defect. . . . [T]he pertinent issue is whether Outlook performed as a herbicide should have."); ("The problem with Outlook is that it causes injury of greater severity, with greater frequency, and over a wider range of conditions than a commercially acceptable herbicide should."). Dawson argues that Outlook is defective under Article 2520 because it is unfit for its ordinary or intended use as an herbicide on sweet potatoes.

Under Louisiana Civil Code Article 2520, a seller implicitly warrants that a product is free of redhibitory defects. Under Article 2524 a seller implicitly warrants that the item sold is reasonably fit for its ordinary or intended use. La. Civ. Code art. 2524. A product is not necessarily defective under Article 2520 simply because it is unfit for its intended use under Article 2524. See La. Civ. Code Ann. art. 2524 cmt. b (1993) (expressly recognizing that a product can be unfit for its ordinary use, even though it is free from redhibitory defects).

However, in most instances, a product unfit for its ordinary or intended use under 2524 will also be defective under 2520. George L. Bilbe, Redhibition and Implied Warranties Under

4

the 1993 Revision of the Louisiana Law of Sales, 54 La. L. Rev. 125, 141 (1993) (anticipating that there will be "relatively few situations" where a product is unfit for ordinary use but not covered by redhibition law). While there are a few situations in which a product can be unfit for its ordinary use, yet free from redhibitory defects,[1] Defendants have not shown that this is one of those rare cases.

In this case, there is a genuine issue of material fact as to whether Outlook was defective within the meaning of Article 2520. Under Article 2520, a defect is a "physical imperfection or deformity, a lacking of a necessary component or *level of quality*." Downs, 899 So.2d 792 at 796 (emphasis added) (citing Williams v. Louisiana Mach. Prop., Inc., 387 So.2d 8, 11 (La. App. 3d Cir. 1980)); see also Mire, 927 So.2d at 1118 n.4. Defects in quality are redhibitory only if they render the product useless, or so inconvenient that it must be presumed that a buyer would not have purchased the product had it known of the defect. See La. Civ. Code Ann. art. 2520.

Dawson expert, Dr. Mike Cannon, states in his expert report that Outlook is more

---

[1] For example, when a product is working as the seller intended, but the product as a whole works differently than the buyer expected, the product is unfit for its intended use, but not necessarily defective. See Mire v. Eatelcorp, Inc., 2004-2603, p. 9, (La. App. 1 Cir. 12/22/05); 927 So.2d 1113, 1118 (company designed cellular telephones with a feature that rendered them inoperable with other service providers). Also, a zoning ordinance that restricts how property can be subdivided does not qualify as a defect under 2520, but may render the property unfit for its intended use. See Downs v. Hammett Prop., Inc., 39,568, p. 5 (La. App. 2 Cir. 4/6/05); 899 So.2d 792, 796. Finally, if a product works for a shorter duration than a buyer would ordinarily expect, the product is unfit for its intended use, but arguably not defective under 2520. See Hob's Refrigeration and Air Conditioning, Inc., 304 So.2d 326 (La. 1974); see also Bilbe 54 La. L. Rev. at 140-141 (according to the author, Hob's Refrigeration arguably suggests the existence of an implied warranty of fitness not covered by redhibition law); Sepulvado v. Time it Lube, Inc., 39,353, p. 2-3 (La. App. 2 Cir. 3/2/05); 895 So.2d 729, 733 (Caraway, J. dissenting), but see Bilbe 54 La. L. Rev. at 140 (noting that "the warranty recognized in [Hob's Refrigeration] can be characterized as one included in [Article 2520]."). In these rare examples, the plaintiff's cause of action is controlled by the law of conventional obligations—not redhibition. See Avondale Indus., 2003 WL 22697180 at * 2 (citing La. Civ. Code. art. 2524).

"potent" than similar herbicides. [Doc. No. 134-8 at p. 29]. Dr. Cannon also testifies in an affidavit that Outlook's adverse effects are unpredictable, e.g., Outlook damages crops over a large geographical area, in a wide variety of growing conditions, and under low application rates. Id. at pp. 1-3. After reviewing BASF's own product literature, discussing Outlook with BASF's experts, and reviewing the deposition of Dr. David Monks, Dr. Cannon concluded in his expert report that Outlook has a "super activity" that makes it more likely to be absorbed by broadleaf plant roots. Id. at p. 26. A reasonable juror could find that this characteristic is particularly problematic for sweet potatoes, which are themselves broadleaf plant roots. Under these facts a reasonable juror could also conclude that Outlook's potency, unpredictability, and capacity to be absorbed by broadleaf plant roots are defects under Article 2520.

According to Dawson, even if properly applied, herbicides in Outlook's same chemical family, i.e., chloroacetamides, can damage crops. Chloroacetamides, however, usually do not injure plants unless there has been excessive rain or irrigation, and when there is excessive rain or irrigation, these herbicides do not usually kill sweet potatoes. Dawson's evidence suggests that, unlike other chloroacetamides, Outlook damages sweet potatoes with or without excess water, and that damage occurs when farmers apply less product than is recommended by the label. Id. at 20-21. Dawson points to a case in which a farmer allegedly applied Outlook to one sweet potato field and a different herbicide to an adjacent sweet potato field; the adjacent field had normal yields, but sweet potatoes sprayed with Outlook were damaged. Id. at p. 19-20. In another case, Outlook allegedly destroyed 100% of a farmer's sweet potatoes. Id. at p. 21. Dawson has presented evidence creating a genuine issue of material fact as to whether Outlook's potency, unpredictability, and ability to be readily absorbed by broadleaf plant roots render it

6

unreasonably inconvenient or useless as a sweet potato herbicide.

### 2.    Knowledge of Defect

Dawson cannot recover for defects that were known or should have been known at the time of the sale. Jessup, 482 F.3d at 342. BASF argues that Dawson's redhibition claim must fail simply because Dawson knew that Outlook "[could] cause injury to sweet potatoes." The Court disagrees.

On November 5, 2004, the EPA approved Outlook for use on sweet potato fields in Louisiana. According to Outlook's 2005 label, "[t]he use of Outlook herbicide can cause injury to sweet potatoes . . . The option of applying Outlook for weed control versus crop injury should be based on the potential crop losses due to weed infestations versus potential losses from crop injury." [Doc. No. 121-5 at 2]. It is undisputed that George Clint Striplin, the agent of Dawson Farms responsible for selecting Outlook, read the 2005 label.

Although Striplin read Outlook's label, Dawson's redhibition claim is still viable. Outlook's label did not inform Striplin that the "potential for crop injury" was more than the usual potential for crop injury associated with chloroacetamides during heavy rain. [Doc. No. 134-8 at p. 2-3]. Outlook's alleged defect is more than mere potential for crop injury under specific conditions; as was noted above, there is evidence that Outlook is easily absorbed by sweet potatoes and has a potency and unpredictable quality that causes it, even under normal weather conditions, to injure so many sweet potatoes that it is virtually useless as a sweet potato herbicide. BASF sought and obtained an EPA approved label that indicated that Outlook could be an effective sweet potato herbicide, and a reasonable jury could find that it is highly unlikely that Dawson would have applied Outlook to its sweet potatoes if it had known that Outlook

7

would cause unpredictable and excessive damage when properly used on sweet potatoes.

BASF argues that the holding in In re Air Bag Product Liability Litigation 7 F.Supp.2d 792 (E.D. La. 1998) establishes that Outlook's warning sufficiently apprised Dawson about its alleged defects. Air Bag is distinguishable from this case. In Air Bag, it was undisputed that the air bags were effective products. The issue, then, was whether the warnings apprised buyers that their useful product had characteristics that rendered the product unsafe in some circumstances. The issue in this case is whether the warning apprised buyers that Outlook had characteristics that rendered the sweet potato  herbicide unreasonably inconvenient or entirely useless due to the extent and unpredictability of the damage it caused under normal use.

Although the label indicates that Outlook had "potential for crop injury," the label did not indicate that this potential for crop injury was anything more than the usual risks associated with other sweet potato herbicides. On the contrary, the label arguably indicates that Outlook could reasonably function as a sweet potato herbicide in Louisiana. The top of Outlook's label stated "FOR DISTRIBUTION IN LOUISIANA . . . FOR WEED CONTROL IN SWEET POTATO." [Doc. No. 121-5 at 2].

BASF next argues that Dawson would have discovered that Outlook was defective with a simple inspection.

Dawson cannot recover for defects that are apparent, such that they might have been discovered by simple inspection. Air Bag, 7 F.Supp.2d at 798. Simple inspection connotes more than casual observation and requires examination with a view of ascertaining the thing's soundness. Id. (quoting Nesbitt v. Dunn, 28,240, p. 11 (La. App. 2 Cir. 4/3/96); 672 So.2d 226, 234). The ultimate inquiry is "whether a reasonably prudent buyer acting under similar

8

circumstances would have discovered the . . . problem prior to . . . sale." Id. (quoting Fruge v. Hancock, 94-730, p. (La. App. 3 Cir. 12/7/94); 647 So.2d 488, 492).

The label on Outlook warned Dawson that "Outlook should be tested on a portion of the crop to determine if the use of Outlook is suitable for the intended use." BASF argues that a reasonable buyer, after following this test, would have discovered that the product was defective. BASF, however, assumes that a reasonable buyer would necessarily have conducted the recommended test and that the test would necessarily have revealed Outlook's defects.

In response, Dawson presents evidence that, before Outlook was sold as a sweet potato herbicide, Dawson used Dual, an herbicide in the same chemical family as Outlook and also manufactured by BASF, on its sweet potatoes, and that once Outlook was introduced into the sweet potato market, Dual was no longer labeled or marketed as a sweet potato herbicide.[2] Thus, Dawson was required to change its herbicide in 2005 and chose to use Outlook, which, like Dual, was manufactured by BASF and labeled for use on sweet potatoes. Under the circumstances, a reasonable buyer would not necessarily have tested Outlook.

Second, assuming that a reasonable buyer would have tested Outlook on its crop, it is unclear whether that same buyer would have tested Outlook for a duration that would have revealed Outlook's defects. Dawson has presented evidence that Outlook's defects are usually only revealed after an entire growing season, and that, because sweet potatoes grow underground, farmers cannot observe Outlook's effects as easily as they can aboveground crops. Therefore, in order to test Outlook, Dawson would have had to forego using any herbicide while testing

---

[2] BASF had previously obtained from the EPA approval to sell Dual as a sweet potato herbicide. According to Dawson, after BASF started marketing Outlook, Dual was no longer labeled for use on sweet potatoes in Louisiana. It is unclear why Dual was no longer marketed for use on sweet potatoes.

9

Outlook for an entire growing season. A jury could find that, under these circumstances, a reasonable buyer could choose to use Outlook without the test and would not be able to discover Outlook's defects until long after the sale.

Finally, even if a reasonable buyer would necessarily have tested Outlook for an entire growing season, it would not necessarily have discovered Outlook's defects because it would only have tested Outlook on "a portion of the crop." There is evidence from which a jury could conclude that Outlook does not uniformly affect every portion of a farmer's crop. Indeed, one reason Outlook is allegedly defective is because farmers cannot reasonably anticipate if, when, and where it might ruin their crops.

For these reasons, the Court finds that there is a genuine issue regarding whether Dawson knew or should have known that Outlook's qualities made it unreasonably inconvenient or useless as an herbicide, and finds there is a genuine issue of material fact for the jury on Dawson's redhibition claim. Summary judgment on this claim is therefore DENIED.

## B.    Breach of Contract Claim/Implied Warranty of Fitness for Ordinary Use

Dawson argues that BASF breached Article 2524's implied warranty that a product will be fit for its intended use. [Doc. No. 158-3 at 2] ("Regardless of whether the warranty of fitness arose under Article 2520 or 2524, Outlook was clearly not fit for its ordinary or intended use."). A buyer's action under Article 2524 is controlled by the rules of conventional obligations. La. Civ. Code art. 2524 cmt. (b). A buyer can bring an action against a manufacturer for breach of the implied warranty of fitness, even if there is no privity of contract between the parties. In re Gas Water Heater Products, 96-2484, 1996 WL 732525, *4 (E.D.La. Dec. 12, 1996) ("By its text, Article 2524 clearly holds sellers liable. Manufacturers may also be held liable for breach of the

warranty of fitness.") (citing <u>Media Prod. Consultants, Inc. v. Mercedes Benz of N. America, Inc.</u>, 262 So.2d 377, 381 (La. 1972)).

BASF moves for summary judgment on Dawson's Article 2524 claim, arguing that Outlook was fit for its intended use because it "provided effective weed control with the risk of an injurious side effect." BASF, however, assumes that an herbicide is fit for its intended use as long as it "provide[s] effective weed control." BASF's argument assumes that an herbicide can be effective no matter how great its risk to crops.

Contrary to BASF's assertions, there is a genuine issue of material fact as to whether Outlook was fit for use as a sweet potato herbicide. Although Outlook clearly killed weeds, there is evidence that it also killed and injured sweet potatoes at such a rate that a fact finder could conclude it was unfit for use as a sweet potato herbicide.

Thus, even if Dawson does not prevail on its redhibition claim under Article 2520, it can still argue its alternative Article 2524 claim to the jury, and even if the jury were to conclude that Outlook was not defective under Article 2520, it could still find that Outlook was unfit for its ordinary or intended use under Article 2524.

### C.    Design Defect Claim under the LPLA

Dawson also argues that Outlook was unreasonably dangerous in design under the LPLA.[3] La. Rev. Stat. § 9:2800.56(1). To prevail on this claim, Dawson must establish:

(1)    That at the time Outlook left BASF's control "[t]here existed an alternative design that was capable of preventing the claimant's damage," and

_____

[3] The LPLA provides for several causes of actions, such as failure to warn, breach of express warranty, and design defect. Originally it was unclear which of these theories Dawson was pursuing. Dawson's response to BASF's Motion for Summary Judgment, however, has confirmed that Dawson's sole theory of recovery under the LPLA is a design defect claim under Louisiana Revised Statute § 9:2800.56(1).

11

> (2)     That the likelihood and gravity of Dawson's damages from Outlook outweighed
>          BASF's burden of adopting the alternative design and the decreased utility, if any,
>          of the alternative design ("Risk-utility analysis").

See La. Rev. Stat. § 9:2800.56(1) To withstand BASF's motion for summary judgment, Dawson

must present evidence sufficient to enable a reasonable fact finder to conclude that it established

both of these essential elements. Morgan v. Gaylord Container Corp., 30 F.3d 586, 591 (5th Cir.

1994) (citing Lavespere v. Niagra Mach. & Tool Works, Inc., 910 F.2d 167, 181 &183 (5th Cir.

1990).

Dawson has presented evidence creating genuine issues of fact on the likelihood and

gravity of damages from Outlook's design. Dawson has also presented evidence that there is a

reasonable alternative design for a sweet potato herbicide. According to Dawson, Dual herbicide

is an herbicide in the same chemical family as Outlook, but has an alternative design that makes

it a safer sweet potato herbicide.[4]  According to Dr. Cannon's affidavit, Dual's design controls

weeds with an efficiency similar to Outlook, but Dual's design makes it less dangerous to crops.

[Doc. No. 134-8 at 3].

BASF also argues that there is insufficient evidence of the burden on it to adopt the

alternative designs.

To avoid summary judgment on a defective design claim, a plaintiff must usually present

evidence regarding the burden on the manufacturer of adopting an alternative design. Id.

However, even if a product is complicated, a finder of fact can assess the burden on the

---

[4]  A manufacturer can produce both the defective product and the reasonable alternative.
See, e.g., State Farm Mut. Auto. Ins. v. Ford Motor Co., 2004 CA 1311, p. 19 (La. App. 1 Cir.
6/15/05); 925 So.2d 1, 12 (Ford made a defective speed activation control switch and an
alternative switch that did not cause fires).

manufacturer of adopting the alternative design when, as here, the alternative design and allegedly defective design are both actually made by the same manufacturer. See Perez v. Brown Mfg., No. 98-478, 1999 WL 527734, * 5 (E.D. La. 1999) (concluding that fact finder could do risk utility analysis when alternative tree cutter was made by same manufacturer as defective tree cutter).

In addition, contrary to BASF's claims, Dawson has in fact presented evidence regarding the burden of adopting an alternative design. Dawson's evidence suggests that the cost of adopting the alternative design was negligible because BASF already manufactures a product with the alternative design. A reasonable juror could conclude from these facts that BASF, with little cost, could simply continue to market Dual, a product that it was already making in 2005 and that it continues to make.

For these reasons, the Court find as that there is a genuine issue of material fact on Dawson's design defect claim, and denies summary judgment on that claim.

## III.   CONCLUSION

For the foregoing reasons, BASF's Motion for Summary Judgment [Doc. No. 121] on Dawson's negligence, negligent misrepresentation, and LUTPA claims is GRANTED. BASF's motion for summary judgment on Dawson's redhibition, breach of warranty, and design defect claims is DENIED.

MONROE, LOUISIANA, this _____13_____ day of _____May_____, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

13