RECEIVED
IN MONROE, LA

 OCT 1 5 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **DAWSON FARMS, LLC** | **CIVIL ACTION NO. 06-0737** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **BASF CORP., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Before the Court are nine (9) motions in limine filed by Defendant BASF Corporation ("BASF") [Doc. Nos. 142, 144, 146, 147, 148, 149, 151, 152, & 154]. For the following reasons, the motions are GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dawson Farms, LLC ("Dawson") grows sweet potatoes in Delhi, Louisiana. In 2005, BASF marketed the herbicide Outlook to Louisiana sweet potato growers. Prior to 2005, Dawson and other Louisiana sweet potato growers controlled weeds by applying an herbicide called Dual Magnum.[1]

During the 2005 growing season, Dawson treated its sweet potato crop with Outlook. Dawson claims that Outlook caused severe damage to its sweet potatoes by producing stunted and malformed sweet potatoes. Dawson also claims that the damage caused by Outlook was more severe than that which would have been expected with Dual Magnum.

Dawson filed suit against BASF, alleging various claims. [Doc. No. 1]. Following a partial

---

[1]Dawson often refers to the herbicide that it applied before 2005 as "Dual." However, the herbicide's actual name is Dual Magnum or Dual I Magnum.

1

grant of summary judgment, Dawson's remaining claims against BASF at this time are for redhibition, breach of the implied warranty of fitness for ordinary use, and design defect. [Doc. Nos. 182 & 183].

On April 18, 2008, BASF filed the instant motions in limine. [Doc. Nos. 142, 144, 146, 147, 148, 149, 151, 152, & 154]. Dawson subsequently responded in opposition. [Doc. Nos. 174, 167, 173, 171, 165, 166, 172, 175, & 168]. BASF then filed replies in support of its motions. [Doc. Nos. 212, 220, 204, 210, 208, 206, 214, 216, & 218].

Following extensive briefing, the Court is now prepared to rule.

## II.   LAW AND ANALYSIS

### A.    Motion in Limine to Exclude Plaintiff's Argument that BASF Rushed Outlook to Market and BASF Marketing Documents [Doc. No. 142]

BASF moves the Court to enter an order directing Dawson's counsel to approach the bench for a ruling on admissibility before referring to any BASF documents related to marketing or BASF's motives for expanding Outlook's use to sweet potato crops. [Doc. Nos. 142-3–142-7, referred to as "Exhibit A"]. BASF argues that these topics and documents are irrelevant and unduly prejudicial or confusing. *See* FED. R. EVID. 401, 403.

All evidence offered at trial is subject to a threshold test of "relevancy." *United States v. Nutall*, 180 F.3d 182, 188–89 (5th Cir. 1999). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 189 (citing FED. R. EVID. 401). Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." FED. R. EVID.

2

403.

The marketing documents refer to market pressures affecting Outlook and BASF's marketing strategy to expand Outlook's application to more crops, including sweet potatoes. Apparently, Outlook's share of the herbicide market was declining or had the potential to decline. BASF argues that Dawson's introduction or reference to this evidence is a thinly veiled attempt to revive its "rushed to market theory." Dawson responds that this evidence is relevant to show why BASF decided to expand the allowed uses of Outlook to include sweet potatoes. Dawson also responds that some of the marketing evidence BASF attempts to exclude may be probative of facts other than BASF's marketing motives.

BASF's concern for profits is not relevant to whether Outlook was more or less likely to have a redhibitory defect, be defective in design, or be unfit for its intended use. In addition, there is a risk that jurors may infer that BASF negligently expanded Outlook's application to sweet potatoes, which is irrelevant to Dawson's remaining product liability claims. BASF's Motion is GRANTED to this extent.

On the other hand, Dawson is entitled to introduce evidence of BASF's marketing motives to rebut BASF's claim that it marketed Outlook as a sweet potato herbicide at the request of Louisiana farmers and professors *if and when* BASF makes such a claim at trial. To prevent the risk of prejudice or confusion, the Court will consider cautioning the jury during trial and/or during jury instructions regarding the proper probative value of BASF's marketing motives. **The parties are instructed to draft and file a mutually agreeable cautionary instruction in their pretrial submissions and/or joint jury instructions.**

In addition, Dawson may introduce marketing evidence to prove facts other than BASF's

3

marketing motives without approaching the bench to obtain the Court's permission.

BASF's Motion in Limine [Doc. No. 142] is GRANTED IN PART and DENIED IN PART.

## B. Motion in Limine With Respect to Allegations Made by Non-Parties [Doc. No. 144]

BASF moves the Court to exclude all evidence regarding the experiences of other farmers who allegedly suffered crop losses due to Outlook, arguing that these experiences are too dissimilar from the facts in the instant case and, therefore, should be excluded as irrelevant, unduly confusing, or wasteful of judicial resources. *See* FED. R. EVID. 401, 402, 403. BASF also argues that this evidence contains inadmissible offers to compromise and hearsay. *See* FED. R. EVID. 408, 802.

BASF attached a sample of the disputed evidence in support of its motion in limine, which includes expert testimony on this subject and BASF's "claim files," which contain written complaints by farmers, BASF's internal investigation reports, and settlement agreements.

For the following reasons, BASF's Motion in Limine [Doc. No. 144] is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

### 1. Relevance

In a product liability action, "[e]vidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir. 1980). Evidence of similar accidents is admissible if the other accidents are substantially similar to the facts of the case. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 381 (5th Cir. 1989).

At trial, Dawson intends to prove that Outlook is not a suitable herbicide for sweet potatoes

4

by showing that Outlook damaged other sweet potato crops in the region. The expert testimony submitted indicates that four (4) farmers in Louisiana suffered damage to their 2005 sweet potato crop and that Outlook was identified as a contributing factor. [Doc. No. 167, Exh. B]. Dawson contends in its opposition brief that 11 additional farmers suffered crop losses associated with Outlook, but did not attach evidence supporting this claim. If Dawson wishes to introduce evidence of other farmers' damages, it must establish that Outlook caused or contributed to the damages, that the damages occurred in the same year as the instant case, and that the damages occurred in the same region and affected the same type of crop as the instant case. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 472 (5th Cir. 2006) (holding that other fires were substantially similar because they involved some of the same allegedly defective characteristics and conditions). Until Dawson provides such documentation, the Court will DEFER ruling on BASF's motion on this basis.[2]

**Dawson shall file a supplemental brief that identifies each allegedly similar incident and the bases of similarity and attach all evidence supporting its contentions within 30 days of the date of this Ruling. BASF shall file a supplemental response brief disputing Dawson's bases of similarity or pointing out bases of dissimilarity, if it still opposes admission, and attach all evidence supporting its contentions within 15 days of the filing of Dawson's supplemental brief.**

BASF also disputes whether evidence of other farmers' damages is relevant to establish that Dr. Cannon's, Dawson's expert, methodologies and conclusions are reliable. BASF, as indicated

---

[2]BASF's argument that Magistrate Judge Hayes' decision to deny consolidation of another farmer's claim with this case, *in a separate cause of action*, is somehow binding or conclusive of these issues is simply without merit. *See C.C. Prine v. BASF Corp.*, 06-0966, Docket Entry No. 63. The considerations of judicial economy upon which that decision was based has no bearing on the Court's evidentiary rulings.

in another motion, disputes whether Dr. Cannon can reliably testify that Outlook caused Dawson's damages. Evaluating the reliability of Dr. Cannon's conclusions will necessitate understanding how he reached those conclusions. Thus, the substance of Dr. Cannon's interviews with other farmers and his investigation of their crop damage is relevant.

BASF's Motion on this basis is DENIED.

## 2. Prejudice

BASF contends that admitting evidence of other farmers' damages will unduly prolong the trial by creating a series of mini-trials and is unduly prejudicial because the evidence consists of reports or allegations of damage that BASF will be forced to rebut. Prejudice may result if BASF is forced to rebut other farmers' claims of damages due to Outlook; however, the relevant inquiry is not whether prejudice will result, but whether the prejudice that does result is unfair. *See* FED. R. EVID. 403. As noted previously, it is unclear whether the evidence regarding other farmers' damages is well documented. If Dawson can provide the documentation specified previously, the Court is inclined to admit this evidence. Until Dawson provides such documentation, the Court will DEFER ruling on BASF's Motion on this basis.

## 3. Offers to Compromise

BASF contends that evidence of settlement agreements between itself and other farmers who allegedly suffered damages due to Outlook constitute inadmissible offers to compromise. *See* FED. R. EVID. 408 ("Evidence of the following is not admissible on behalf of any party, when offered to prove liability . . . : (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim."). BASF submitted an example of a settlement agreement between a farmer and BASF

6

regarding the effect of Outlook on the farmer's sweet potato crop. [Doc. No. 144, Exh. A, p. 7]. To the extent that Dawson wishes to refer or introduce this and similar documents to prove liability, Dawson is prohibited from doing so. *See* FED. R. EVID. 408 (outlining prohibited and permissible purposes).

BASF's Motion on this basis is GRANTED.

### 4.     Hearsay

BASF contends that the evidence of other farmers' complaints contain hearsay and are themselves hearsay and that BASF's internal investigation reports contain hearsay. BASF submitted examples of two (2) farmer complaints and a BASF inspection report. [Doc. No. 144, Exh. A].

If Dawson intends to introduce this and similar documents to prove that Outlook damaged other sweet potato crops—i.e., to establish the truth of the matter asserted—the statements contained therein constitute hearsay. *See* FED. R. EVID. 802. However, these statements and documents may fall within the business record exception to the hearsay rule. *See* FED. R. EVID. 803(6) ("A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the custodian or other qualified witness, unless the source of information or circumstances of preparation indicate lack of trustworthiness."). If it was the farmers' regular practice to document crop production and loss and send complaints to manufacturers or producers of faulty products *and* BASF's regular practice to maintain such files, then the farmers' complaints are admissible. *See United States v. Bueno-Sierra*, 99 F.3d 375, 378–79 (11th Cir. 1996) (holding

7

that the business records exception permits the admission of records of regularly conducted activity produced by the recording entity and regularly maintained by another entity without any independent verification of its truth). BASF's internal investigation reports are similarly subject to the business records exception if they are kept in the ordinary course of business. If Dawson can lay the appropriate foundation at trial, the Court is inclined to admit this evidence.

BASF's Motion in Limine on this basis is DENIED.

## C. Motion in Limine to Exclude Evidence or Argument that BASF Did Not Renew the Supplemental Label for Sweet Potatoes After the 2005 Crop Season and/or that BASF Pulled Outlook® Off the Sweet Potato Market [Doc. No. 146]

BASF moves the Court to exclude all evidence or argument regarding BASF's decision not to renew Outlook's supplemental label for use on sweet potato crops, which effectively removed Outlook from the sweet potato herbicide market. BASF contends that its decision is an inadmissible subsequent remedial measure. *See* FED. R. EVID. 407. In the alternative, BASF argues that the probative value of such evidence is outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403.

According to BASF, it issued a supplement to its Outlook label to permit the use of Outlook on Louisiana sweet potato crops for the 2005 crop year. The label was set to expire on November 4, 2005. Following its expiration, BASF did not renew the supplemental label.

The Court finds that BASF's decision not to renew constitutes a subsequent remedial measure. Rule 407 of the Federal Rules of Evidence prohibits the admission of "measures . . . taken that, if taken previously, would have made the injury or harm less likely to occur" when offered to prove "a defect in the product [or] a defect in the product's design." FED. R. EVID. 407. BASF's decision ultimately removed Outlook from the sweet potato herbicide market, which makes the

8

damages experienced by Dawson "less likely to occur." *Id.*; *see also Dean v. Am. Home Prods. Corp.*, 02-1833, 2007 U.S. Dist. LEXIS 54755, at *5 (E.D. Mo. July 9, 2007) (holding that evidence of product withdrawals is inadmissible); *In re: Propulsid Products Liability Litigation*, 1355, 2003 U.S. Dist. LEXIS 3824, at *5 (E.D. La. Mar. 11, 2003) (holding that evidence of withdrawal of drug from market was inadmissible because "[w]ithout access, the harm which plaintiff complains of would have been less likely"). Dawson argues that BASF's decision is not a remedial measure because BASF contends in this litigation that Outlook is not defective. *See Peterson v. Ford Motor Co.*, 96-1902, 1999 U.S. Dist. LEXIS 15558, at *4–6 (E.D. La. Oct. 4, 1999) (holding that a subsequent "owner notification program" was not a subsequent remedial measure because the defendant-manufacturer denied that there was a defect in the product at issue). Dawson's argument, while creative, would eviscerate the purpose of Rule 407. The exclusionary measure in Rule 407 is designed to encourage defendants to take remedial measures without fear of conceding liability in future litigation. Dawson's intended use of BASF's decision—to show that Outlook is defective or to rebut BASF's claim that Outlook is not defective—goes to liability and is, therefore, precisely the kind of evidence precluded by Rule 407.

In the alternative, the Court finds that the probative value of BASF's decision not to renew is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403.

BASF's Motion in Limine [Doc. No. 146] is GRANTED.

## D. Motion in Limine to Exclude Testimony and Arguments Regarding Effect of Outlook®'s Supplemental Label on the Availability of a Section 18 Label for Similar Products [Doc. No. 147]

BASF moves the Court to exclude any arguments, testimony, or evidence regarding "the alleged effect of the EPA's approval of Outlook®'s Supplemental Label for use on sweet potatoes

9

under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") on the EPA's labeling/registration decisions regarding other similar herbicides, namely Dual Magnum, for use in Louisiana during the 2005 growing season."

BASF anticipates that Dawson will attempt to argue that Outlook's availability as a sweet potato herbicide drove Dual Magnum off the market. BASF argues there is no causal connection between the EPA's decision to approve Outlook for use on Louisiana sweet potatoes and whether the State of Louisiana sought a Section 18 label in 2005 for Dual Magnum. In the alternative, BASF argues that any connection between the availability of Outlook and Dual Magnum is not relevant to a fact at issue. Dawson responds that this evidence is relevant to explain to the jury *why* it stopped using Dual Magnum and switched to Outlook.

Prior to the 2005 growing season, Dawson applied a competing herbicide, Dual Magnum, to its sweet potato crops. Dual Magnum was available for use on Louisiana sweet potato crops because Louisiana sought and obtained a Section 18 label from the EPA. Dawson contends that once Outlook was labeled for use on sweet potatoes, it could no longer use Dual Magnum because a Section 18 label is only available if there are no alternative herbicides available. Dual Magnum was not available for use on sweet potato crops in Louisiana for the 2005 growing season.

Assuming, *arguendo*, that Outlook's availability decreased the likelihood that Louisiana would seek or be able to obtain a Section 18 label for Dual Magnum, the Court finds that this is irrelevant to Dawson's remaining product liability claims. Dawson is certainly entitled to introduce evidence that it used Dual Magnum prior to 2005; that Dual Magnum was not labeled for use on sweet potatoes for the 2005 growing season; and that it used Outlook in 2005 because it was available. Indeed, BASF does not object to the introduction of this evidence. *Why* Dual Magnum

was not available for the 2005 growing season does not tend to make any fact at issue more likely, and its probative value as background evidence is substantially outweighed by the danger that the jury will unfairly infer a causal connection between the availability of Outlook and Dual Magnum and penalize BASF. *See* FED. R. EVID. 403.

BASF's Motion in Limine [Doc. No. 147] is GRANTED.

## E. Motion in Limine to Exclude Evidence and Arguments Regarding Sufficiency of Testing and/or Sufficiency of Decision Making Process for the Release of Outlook® for use on Sweet Potatoes [Doc. No. 148]

BASF moves the Court to exclude any argument, testimony, or evidence regarding (1) the sufficiency of testing Outlook for use on sweet potato crops, and (2) the sufficiency of BASF's decisionmaking process to expand Outlook for use on sweet potato crops.

Before marketing Outlook as a sweet potato herbicide in Louisiana, 17 tests were conducted to measure Outlook's effect on sweet potatoes. BASF argues that the sufficiency of these tests and BASF's decisionmaking process are irrelevant to Dawson's remaining product liability claims. *See* FED. R. EVID. 401. In the alternative, BASF argues this evidence is unduly prejudicial. *See* FED. R. EVID. 403.

For the following reasons, BASF's Motion in Limine [Doc. No. 148] is GRANTED IN PART and DENIED IN PART.

### 1. Sufficiency of the Quality or Quantity of Testing

BASF contends that Dawson should not be allowed to argue that BASF should have performed a greater number of tests or should have employed different testing methods prior to obtaining approval of Outlook for use as a sweet potato herbicide because the obvious inference is that BASF's decision was negligent. Dawson responds that BASF misapprehends the relevance and

11

purpose of this evidence. Dawson seeks to introduce evidence about the adequacy of the tests for the following reasons. According to Dawson, some of BASF's tests were conducted properly and indicated that Outlook was defective when used on sweet potatoes, but some of the tests were conducted improperly and indicated that Outlook was safe. Dawson argues it should be permitted to comment on the quality of the tests when it argues that those tests establish that Outlook is defective. In addition, Dawson seeks to critique the adequacy and quantity of any tests that BASF claims establish that Outlook was safe on sweet potatoes.

The Court finds that this evidence and Dawson's intended uses are relevant to whether Outlook is defective, and the probative value of this evidence outweighs the danger of unfair prejudice. The quality of testing is directly relevant to whether the test results do/do not show that Outlook is a suitable sweet potato herbicide. However, the quantity of tests tends to implicate negligence. Therefore, Dawson may comment on the quantity of these tests so long it establishes that there is a correlation between quantity and the reliability of test results.

BASF's Motion on this basis is DENIED.

## 2. BASF's Decisionmaking Process

BASF seeks to preclude Dawson from arguing or implying that the decisionmaking process prior to the release of Outlook was insufficient. In its reply brief, BASF attached the evidence that it seeks to exclude: a number of internal BASF emails concerning the expansion of Outlook to sweet potato crops. [Doc. No. 208-2, Exh. A].

The only evidence that is potentially inadmissible are two emails indicating that BASF needed to proceed with caution when deciding whether to expand Outlook's application to sweet

12

potato crops[3] and that the testing results regarding the safety of Outlook on sweet potato crops were conflicting.[4] If Dawson intends to argue that BASF negligently or recklessly decided to expand Outlook's use to sweet potatoes, BASF is correct in asserting that such arguments are irrelevant to Dawson's remaining product liability claims. The statement that BASF needed to proceed with caution is irrelevant and prejudicial and, therefore, inadmissible. *See* FED. R. EVID 403. In addition, Dawson is prohibited from introducing or commenting on other statements in these two emails to imply or argue that BASF was negligent. If Dawson seeks to use other statements in these emails for another permissible purpose, such as commenting on the adequacy of testing as discussed previously, the Court will allow their admission.

BASF's Motion on this basis is GRANTED IN PART and DENIED IN PART.

**F.     Motion in Limine to Exclude Evidence of BASF Brochures Unrelated to Use of Outlook® on Sweet Potatoes [Doc. No. 149]**

BASF moves the Court to exclude a 2001 BASF brochure that compares Outlook to Dual II Magnum on crops other than sweet potatoes and any related documents. Dawson argues that this evidence is relevant to establish (1) that Outlook's mechanism of action, or chemical properties, renders it unsafe for use on sweet potato crops, and (2) that the mechanism of action of the herbicide that Dawson used previously, Dual I Magnum, is superior.

The 2001 brochure includes several statements that are relevant to the instant motion:

---

[3]The email provides in pertinent part: "We have sufficient experience with sugarbeet, onion, and potato to proceed. . . . We need to proceed with caution on . . . sweet potato." [Doc. No. 208-2, Exh. A, p. 1, 10].

[4]The email provides in pertinent part: "I mentioned to Gary Fellows that there was some injury from Monks [sic] study a couple of years back on SWEET POTATO. . . . NCSU wants to go forward with sweet potato on the label. Brad Guice had trials in the past also on sweet potato with no injury." [Doc. No. 208-2, Exh. A, p. 2, 12].

- "Outlook has a more active molecule [than Dual II Magnum] and ideal water solubility. So Outlook is more available for uptake by germinating weeds, needs less moisture to activate in dry conditions and remains active in wet conditions."

- "Outlook provides a higher level of activity on small-seeded broadleaf weeds."

- "Outlook has a lower use rate — so you have 33 percent less product to handle, to warehouse and to transport."

- "The soil dispersion test . . . shows the superior activity of Outlook in the weed germination zone compared to Dual II Magnum."

According to Dawson, the characteristics that BASF touts in this brochure are the same characteristics that increase Outlook's potential for injury to sweet potatoes. Dawson claims that Outlook is activated by water and is carried by water to the sweet potato root, where it is absorbed into the root. For support, Dawson cites to Dr. Shankle's testimony, BASF's expert, who confirmed that there is more potential for damage to a sweet potato if there is a higher concentration of herbicide in the root zone of the sweet potato. BASF's statements in the brochure help to explain why Outlook caused the alleged damage in this case—because Outlook is more active and water soluble, it is more available for absorption by roots in wet and dry conditions. The Court, therefore, finds that the statements in the brochure are relevant to Dawson's defect theory and not unduly prejudicial. BASF's Motion on this basis is DENIED.

Dawson also intends to use the statements in the brochure, which refer only to Dual II Magnum, to establish that Dual Magnum is superior to Outlook. Prior to 2005, Dawson used Dual Magnum, also referred to as "Dual I Magnum," instead of Outlook. Dawson relies, in part, on scientific literature stating that Dual II Magnum is the most reactive formulation of the Dual family of herbicides for the proposition that Outlook is more active than Dual Magnum because BASF claimed in its brochure that Outlook is more active than Dual II Magnum.

The brochure claims that Outlook is more active, more available for uptake, and more soluble than Dual II Magnum. The scientific literature states that Dual Magnum and Dual II Magnum contain the same "most active isomer of metolachlor," although Dual II Magnum contains a "safener" for use in crops like corn. Dawson contends that Dual Magnum and Dual II Magnum are similar in all relevant respects because they have the same active ingredient. Dawson, however, fails to cite to any evidence that would permit the Court or a reasonable juror to fairly compare Outlook to Dual Magnum based on statements comparing Outlook to Dual II Magnum. For example, Dawson has failed to explain whether the safener present in Dual II Magnum is significant. Until Dawson provides such evidence, the Court will DEFER ruling on BASF's Motion on this basis.

**Dawson shall file a supplemental brief that identifies evidence showing that Dual Magnum and Dual II Magnum are true comparators for purposes of comparison to Outlook within 30 days of the date of this Ruling. BASF shall file a supplemental response brief, if it still opposes admission, within 15 days of the filing of Dawson's supplemental brief.**

**G.      Motion to Strike Plaintiff's Exhibit – "Summary of 2005 Test Digs at Dawson Farms and Yield Estimate Calculations" [Doc. No. 151]**

BASF moves the Court to exclude Dawson's exhibit entitled "Summary of 2005 Test Digs at Dawson Farms and Yield Estimate Calculations" ("Summary") prepared by its accounting expert, A. Carlton Clark ("Clark"). BASF argues that the Summary is an untimely supplemental expert report. Dawson responds that the contents of the Summary are admissible as a "summary" or demonstrative aid. *See* FED. R. EVID. 1006 (allows admission of summaries in lieu of voluminous originals); 611(a) (demonstrative aid can be used to explain an argument based on evidence that has already been admitted).

The Summary consists of 83 pages. The first 20 pages transcribe, organize, and summarize the handwritten notes of Clint Striplin ("Striplin"), an employee of Dawson, who recorded the results of test digs in Dawson's various sweet potato fields in 2005. Striplin's handwritten notes are not included in the Summary. The remaining pages consist of Clark's yield estimates under three alternative scenarios; Clark apparently relied on Striplin's notes to estimate the quality and quantity of sweet potatoes produced in each field during the 2005 growing season. It appears that Clark's first expert report, which was timely disclosed, contains a different yield analysis.

The basis and opinions of an expert are required to be timely disclosed and supplemented. *See* FED. R. CIV. P. 26(a)(2), (e)(2). Per the Court's scheduling order, Dawson's expert report was due by November 16, 2007 [Doc. No. 81]; according to BASF, the Summary was not disclosed until April 17, 2008, well after the expert report deadline. An expert report may be supplemented up until the pretrial disclosure deadline. *See* FED. R. CIV. P. 26(e)(2). However, the Summary is not a "supplemental" expert report because it contains *new* opinions based on Striplin's notes, which were disclosed on January 18, 2007,[5] and available prior to the expiration of the expert report deadline. *See id.* ("Any *additions or changes* to [the] information [in the expert's report or deposition] must be disclosed.") (emphasis added); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546 (5th Cir. 1996) (stating that the purpose of supplemental expert report is to supplement—not to extend—the expert report deadline); *see also Lampe Berger USA v. Scentier, Inc.*, 04-354-C-M2, 2008 U.S. Dist. LEXIS 60648, at *6–7 (M.D. La. Aug. 8, 2008) (listing cases

---

[5]Although BASF states that Striplin's notes were produced on January 18, **2008**, this appears to be a mistake. [Doc. No. 214, p. 2]. In the same sentence, BASF states that the notes were produced one month after Striplin's December 10, **2007** deposition and well after the expert report deadline. [Doc. No. 214, pp. 2–3].

16

excluding late-filed expert reports that were based on previously available information). The Court,

therefore, finds that the Summary is an untimely expert report.

Because the Summary is untimely, BASF requests that the Court exclude it from trial.

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party
> is not allowed to use that information . . . to supply evidence . . . at trial, unless the
> failure was substantially justified or is harmless. In addition to or instead of this
> sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A)  may order payment of the reasonable expenses including attorney's
> > fees, caused by the failure;
> >
> > (B)  may inform the jury of the party's failure; and
> >
> > (C)  may impose other appropriate sanctions.

FED. R. CIV. P. 37(c)(1)(A).  In lieu of excluding the Summary, the Court is inclined to admit it

under the conditions set forth below.  The Court is also inclined to assess against Dawson (1) the

costs of additional depositions of Striplin and Clark,[6] and (2) BASF's reasonable attorney's fees on

the instant motion and any supplemental depositions.  **Dawson may file a short statement of no**

**more than five (5) pages to show cause why it should not be sanctioned in this manner within**

**10 days of this Ruling.**  The Court will DEFER ruling on BASF's Motion in the interim.

### H.    Motion to Exclude Evidence of BASF Internal Communications Following the 2005 Growing Season [Doc. No. 152]

BASF moves to exclude testimony, documents, communications, or other evidence relating

to BASF's internal communications following the 2005 growing season regarding Outlook's

application to sweet potato crops.  BASF appears to be primarily concerned with email

correspondence between Dr. Westberg and Dr. Evans, two BASF employees, and Dr. Westberg's

---

[6]The Court informed the parties on June 19, 2008, via facsimile that supplemental
depositions of Striplin and Clark would be permitted.

related deposition testimony. [Doc. No. 152, Exhs. A, p. 72–81; B, pp. 1–3].[7] BASF further requests that the Court direct Dawson to proffer any remaining evidence related to the testimony of Dr. Westberg or Dr. Evans outside the hearing of the jury for a determination of admissibility prior to its publication. Finally, BASF seeks an order instructing the parties, counsel, and witnesses to refrain from mentioning or referring to these topics without the Court's prior approval.

On September 26, 2005, Dr. Evans emailed Dr. Westberg and asked him to answer a series of questions about the "DMTA-P[8]/Sweetpotato [sic] issue." In response, Dr. Westberg referred to an "injury situation" and admitted that he "was generally aware that chloracetamides can have phytotoxic[9] affects on sweet potatoes to a greater extent than potatoes." Dr. Westberg opined that "no one person is to 'blame'" and that the sweet potato issue resulted from "workload, a loss of internal expertise/history, and the lack of overall project management oversight to make sure that all the i's are dotted and t's are crossed." Finally, Dr. Westberg mentions that he "expressed caution" when the strategy for expanding Outlook to sweet potato crops was discussed.

BASF argues that the obvious inference from these statements is that BASF may have been negligent when labeling Outlook for use on sweet potato crops and that evidence of negligence or fault is irrelevant to Dawson's remaining product liability claims. In the alternative, BASF argues that the email correspondence is unduly prejudicial.

_____

[7]BASF also points to Dr. Evans' deposition testimony, but none of his statements are particularly relevant or prejudicial. [Doc. No. 152, Exh. C]. The email correspondence at issue also contains a reply from Kyle Keller, but none of his responses are particularly relevant or prejudicial. [Doc. No. 152, Exh. B, p. 4].

[8]DMTA-P is an acronym for Outlook's chemical name.

[9]Phytotoxic means poisonous to plants.

18

The Court agrees that some of Dr. Westberg's statements are inadmissible. Dr. Westberg's statements suggest that Outlook could have damaged sweet potato crops, that Outlook is an unfit sweet potato herbicide, and that Outlook could have been defective in design, which are relevant to Dawson's remaining product liability claims. *See* FED. R. EVID. 401. However, the Court finds that the probative value of some of these statements is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403. Dr. Westberg's statements that "no one person is to 'blame'" and that the sweet potato issue resulted from "workload, a loss of internal expertise/history, and the lack of overall project management oversight to make sure that all the i's are dotted and t's are crossed" present a serious risk that jurors may infer that BASF negligently decided to expand Outlook's use and inappropriately penalize BASF. The same risk is present with respect to Dr. Westberg's statement that he "expressed caution" when the strategy for expanding Outlook to sweet potato crops was discussed. These specific statements and related deposition testimony are inadmissible; the remaining statements are admissible. BASF's Motion regarding the email correspondence is GRANTED IN PART and DENIED IN PART.

BASF also requests a much broader exclusion of evidence, including other unidentified internal communications on this issue. The Court cannot rule on the admissibility of such evidence unless and until the Court is presented with specific evidence. Therefore, the Court will DEFER ruling on BASF's Motion on this basis. The Court will revisit the admissibility of the aforementioned evidence during trial. If the evidence suggests that it is more likely than not that Outlook was defective, the Court is inclined to admit it. If the evidence suggests that BASF's decisionmaking process was negligent, the Court is disinclined to admit it. In order to respect the jury's time during this trial, Dawson shall offer such evidence while the jury is recessed for a

19

determination of admissibility.

## G.    Motion to Exclude James Michael Cannon or, in the Alternative, Motion to Limit Testimony [Doc. No. 154]

BASF seeks to exclude or limit the testimony of Dawson's expert, Dr. Michael Cannon ("Dr. Cannon"). *See* FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). BASF contends that Dr. Cannon (1) is not qualified to render certain opinions, (2) used unreliable methodologies, and (3) rendered unduly confusing and prejudicial opinions. For the following reasons, BASF's Motion [Doc. No. 154] is DENIED IN PART and DEFERRED IN PART.

### 1.    Dr. Cannon's Qualifications and Opinions

BASF argues that Dr. Cannon is not qualified to offer opinions regarding (1) Outlook's mechanism of action and the superiority of an alternative design, (2) Outlook's label, and (3) the cause and extent of damage. Although BASF frames its objection as based on Dr. Cannon's qualifications, the substance of its arguments also implicates the reliability and relevance of Dr. Cannon's opinions.

Dr. Cannon has a PhD in horticulture and is the Extension Specialist for sweet potatoes at Louisiana State University's Agricultural Center. For over thirty years, he has assisted sweet potato growers in Louisiana and around the world in identifying and solving problems related to insect pests, disease, weed problems, nutritional problems, and chemical injury. Dr. Cannon also grows sweet potatoes himself.

BASF first challenges Dr. Cannon's opinion regarding Outlook's mechanism of action, or its chemical properties, and the superiority of an alternative design. It appears that Dawson intends

20

to use Dr. Cannon's testimony to show that Outlook's "super activity" renders it defective and that another herbicide previously used by Dawson, Dual Magnum, is superior because it is comprised of less active chemical compounds.

In his expert report, Dr. Cannon describes how Outlook is absorbed by plants. This is based on an email from Dr. Mark Shankle ("Dr. Shankle"), a weed scientist from Mississippi State and one of BASF's experts, stating that Outlook and Dual (Magnum), which are both chloroacetamides, are absorbed by the roots of plants and inhibit root growth and interfere with cell division. [Exh. A. P. 10]. Dr. Cannon also reviewed the deposition of another weed scientist, Dr. Monks, who stated that Outlook is absorbed by the roots in broadleaf plants. Finally, Dr. Cannon reviewed a BASF brochure comparing Outlook's mechanism of action and performance to another chloroacetamide, Dual Magnum. That brochure, the subject of a previously discussed motion in limine, asserts that Outlook has an active molecule that makes it more available for uptake by germinating weeds. After discussing Outlook with Dr. Shankle, reading the product literature, and reviewing Dr. Monk's deposition, Dr. Cannon concluded that

> Outlook seems to be more 'potent' than other members of this family of herbicides I'm familiar with. The promotional literature touts Outlook as having 'Superior Activity' and states that 'Outlook herbicide provides greater activity in the weed germination zone for improved uptake.' It goes on to compare the 'Super Activity' of Outlook with Dual II Magnum stating it is 'superior to Dual' herbicide. In my experience as Extension Sweet Potato Specialist, Outlook damage to sweet potatoes in 2005 was more widespread than damage I've seen with other members of this family of herbicides, possibly confirming the 'Super Activity' of this product. . . . Sweet potatoes are a broadleaf [plant] and thus would, according to Dr. Monk's statement, absorb Outlook through the root. This could possibly explain injury Outlook caused to sweet potatoes in Louisiana in 2005 especially following a significant rain event.

[Exh. A].

The Court finds that Dr. Cannon is qualified by education and experience to opine that Outlook is defective and Dual Magnum is superior based on their respective chemical characteristics. BASF's own claims regarding Outlook's "activity" and "superior water solubility" indicate that Outlook is absorbed by plants at an increased rate. There is also expert testimony that a higher concentration of an herbicide in the root zone, where it can be absorbed by a germinating sweet potato root, is injurious. As discussed below, Dr. Cannon is qualified to diagnose the cause and extent of chemical injury to sweet potatoes. BASF is correct in asserting that Dr. Cannon is not a chemist—but Dr. Cannon does not purport to be one nor does his opinion regarding Outlook's defects and the feasibility of an alternative design purport to conclusively determine why, at a molecular level, Outlook is particularly dangerous to sweet potatoes while Dual Magnum is safe. Dr. Cannon's opinion on this particular issue is nonetheless helpful to the jury because it supports his more general conclusion that Outlook is defective and Dual Magnum is superior based on a comparison of their effects on crops that he observed during the 2005 growing season and previous seasons.

Dr. Cannon's testimony on this issue, however, is predicated in part on statements in BASF's brochure comparing Outlook to Dual II Magnum, which may or may not be relevant in the instant case for the reasons described in a previous ruling on another motion in limine. The admissibility of Dr. Cannon's testimony comparing Outlook and Dual Magnum is, therefore, conditioned on Dawson proving that Dual Magnum and Dual II Magnum are fair comparators. The Court will DEFER ruling on BASF's Motion on this basis.

The Court also finds that Dr. Cannon is qualified and his testimony is relevant to whether Outlook caused the crop loss at issue in this case. Dr. Cannon is uniquely qualified to render

opinions about the cause of sweet potato damage. For decades, Dr. Cannon has examined sweet potatoes and worked with farmers in Louisiana and elsewhere to diagnose the source of sweet potato injuries. For almost twenty years, Dr. Cannon has kept photographs of different injuries to sweet potatoes. When diagnosing injuries, Dr. Cannon, like BASF's own experts, compared the injuries observed with past photographs of injuries known to be caused by a particular source, such as flooding, chemical injury, or insect damage. According to a number of experts, chloroacetamide injury is easily recognizable because of its distinct symptomology. As a sweet potato specialist in a sweet potato growing state, Dr. Cannon's opinion about the cause of sweet potato injury in this case is within his area of experience. BASF's Motion on this basis is DENIED.

For the same reasons, the Court finds that Dr. Cannon is qualified to render opinions about the extent of crop loss associated with Outlook. In addition to diagnosing the source of crop loss, Dr. Cannon has experience diagnosing the scope of crop loss. BASF's Motion on this basis is DENIED.

Finally, the Court finds that Dr. Cannon is qualified to testify that Outlook's label, despite warning about Outlook's "potential for crop injury," did not inform Dawson and other farmers about Outlook's defects. Dr. Cannon's thirty years of working with sweet potato farmers renders him qualified to draw conclusions about how farmers would understand and apply instructions on an herbicide label. BASF's Motion on this basis is DENIED.

## 2.    Dr. Cannon's Methods

BASF asserts that Dr. Cannon's methods are unreliable. Dr. Cannon, before drafting his expert report, interviewed several farmers across different states, made multiple visits to Dawson's farm, reviewed internal tests conducted by BASF, and discussed Outlook with BASF's own experts.

23

Dr. Cannon compared the damage at Dawson's farm to pictures of other crops known to have been damaged by herbicides. Dr. Cannon's methods often paralleled the same methods used by BASF's own experts. Despite the similar methods used by Dr. Cannon and BASF's experts, BASF argues that Dr. Cannon's methods are inadequate because he reached his conclusion early in the process and then simply looked for evidence to bolster his conclusion.

Dr. Cannon formed an hypothesis—i.e., that Outlook caused Dawson's damages—and then proceeded to test that hypothesis by conducting additional research. Although he did not find much, if any, evidence that suggested his initial hypothesis was erroneous, it does not necessarily follow that his methodologies were unsound. Indeed, the lack of evidence disproving his hypothesis may simply suggest that his initial hypothesis was correct. The Court, therefore, finds that his methods are reliable.

BASF's Motion on this basis is DENIED.

### 3. Confusion and/or Prejudice

BASF argues that, even if Dr. Cannon is qualified and his testimony is reliable and probative of facts at issue, the potential for prejudice and confusion from his testimony is so great that his testimony should be excluded under Rule 403 of the Federal Rules of Evidence. BASF has not explained what makes Dr. Cannon's testimony confusing or prejudicial, nor can the Court deduce a reason why all of his testimony should be excluded.

BASF's Motion on this basis is DENIED.

## III. Conclusion

For the foregoing reasons, Defendant BASF Corporation's ("BASF") motions in limine [Doc. Nos. 142, 144, 146, 147, 148, 149, 151, 152, & 154] are GRANTED IN PART, DENIED IN PART,

and DEFERRED IN PART.

- BASF's Motion in Limine to Exclude Plaintiff's Argument that BASF Rushed Outlook to Market and BASF Marketing Documents [Doc. No. 142] is GRANTED IN PART and DENIED IN PART. The parties are ORDERED to draft and file a mutually agreeable cautionary instruction in their pretrial submissions and/or joint jury instructions regarding the proper probative value of BASF's marketing motives.

- BASF's Motion in Limine With Respect to Allegations Made by Non-Parties [Doc. No. 144] is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART. Plaintiff Dawson Farms, LLC's ("Dawson") is ORDERED to file a supplemental brief that identifies each allegedly similar incident and the bases of similarity and attach all evidence supporting its contentions within 30 days of the date of this Ruling. BASF shall file a supplemental response brief disputing Dawson's bases of similarity or pointing out bases of dissimilarity, if it still opposes admission, and attach all evidence supporting its contentions within 15 days of the filing of Dawson's supplemental brief.

- BASF's Motion in Limine to Exclude Evidence or Argument that BASF Did Not Renew the Supplemental Label for Sweet Potatoes After the 2005 Crop Season and/or that BASF Pulled Outlook® Off the Sweet Potato Market [Doc. No. 146] is GRANTED.

- BASF's Motion in Limine to Exclude Testimony and Arguments Regarding Effect of Outlook®'s Supplemental Label on the Availability of a Section 18 Label for Similar Products [Doc. No. 147] is GRANTED.

- BASF's Motion in Limine to Exclude Evidence and Arguments Regarding Sufficiency of Testing and/or Sufficiency of Decision Making Process for the Release of Outlook® for use on Sweet Potatoes [Doc. No. 148] is GRANTED IN PART and DENIED IN PART.

- BASF's Motion in Limine to Exclude Evidence of BASF Brochures Unrelated to Use of Outlook® on Sweet Potatoes [Doc. No. 149] is DENIED IN PART and DEFERRED IN PART. Dawson is ORDERED to file a supplemental brief that identifies evidence showing that Dual Magnum and Dual II Magnum are true comparators for purposes of comparison to Outlook within 30 days of the date of this ruling. BASF shall file a supplemental response brief, if it still opposes admission, within 15 days of the filing of Dawson's supplemental brief.

- BASF's Motion to Strike Plaintiff's Exhibit – "Summary of 2005 Test Digs at Dawson Farms and Yield Estimate Calculations" [Doc. No. 151] is DEFERRED. Dawson may file a short statement of no more than five (5) pages to show cause why it should not be sanctioned for failing to timely disclose the expert report within 10 days of this Ruling.

- BASF's Motion to Exclude Evidence of BASF Internal Communications Following the 2005

Growing Season [Doc. No. 152] is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

- BASF's Motion to Exclude James Michael Cannon or, in the Alternative, Motion to Limit Testimony [Doc. No. 154] is DENIED IN PART and DEFERRED IN PART.

MONROE, LOUISIANA, this __15__ day of October, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE