RECEIVED
IN MONROE, LA

DEC 18 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DAWSON FARMS, LLC | CIVIL ACTION NO. 06-0737 |
| VERSUS | JUDGE ROBERT G. JAMES |
| BASF CORP., ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

On October 15, 2008, the Court deferred ruling in part on several of Defendant BASF Corporation's ("BASF") motions in limine [Doc. Nos. 144, 149, & 154]. For the following reasons, BASF's motions in limine are GRANTED IN PART AND DENIED IN PART.

I. LAW AND ANALYSIS

A. Motion in Limine With Respect to Allegations Made by Non-Parties [Doc. No. 144]

BASF moves to exclude all evidence regarding the experiences of 15 other farmers who allegedly suffered crop losses due to Outlook, arguing that these experiences are too dissimilar from the facts in the instant case and, therefore, should be excluded as irrelevant, unduly confusing, or wasteful of judicial resources. *See* FED. R. EVID. 401, 402, 403.

Dawson failed to attach evidence to its opposition memorandum that the other farmers' claims are sufficiently similar to its own. Accordingly, the Court deferred ruling in part on BASF's motion until Dawson provided such documentation.

In its supplemental memorandum, Dawson offered evidence showing that the other farmers' claims occurred in the 2005 crop year; occurred in the same region, including Louisiana and adjacent areas of Arkansas and Mississippi; and involved sweet potato crops [Doc. Nos. 239 & 251]. Dawson

also offered evidence that it contends shows that Outlook caused the crop losses suffered by other farmers.

In response, BASF continues to oppose admission of the other farmers' claims [Doc. No. 244]. In general, BASF contends that the other claims are too dissimilar because those farmers planted sweet potatoes in different soils, at different times, under different weather conditions, at different depths, with different rates of Outlook, and sustained different degrees of crop loss when compared to Dawson. For example, BASF claims that Dawson is the only farmer to apply an illegal or excessive amount of Outlook to its crops. BASF also claims that Dawson's degree of crop loss was slight compared to the other farmers' reported losses.

Specifically, BASF also attacks the bases of similarity underlying two claims by other farmers. Farmer Charles Ken Thornhill ("Thornhill") inspected Dawson's crop for insurance purposes, but did not observe damage to Dawson's crop that was similar to the damage he observed in his own crop. BASF also claims that farmer C.C. Prine ("Prine") applied Outlook to his sweet potato crop in Arkansas, but Outlook was not approved for use in Arkansas.

Evidence of similar accidents is relevant if the other accidents are substantially similar to the facts of the instant case. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 381 (5th Cir. 1989). "The 'substantially similar' predicate required for proof of similar accidents is defined by the defect or the product at issue." *Lindy Invs., L.P. v. Shakertown Corp.*, 94-4112, 1997 U.S. Dist. LEXIS 10542, at *5 (E.D. La. July 10, 1997) (citing *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986)). The proponent of similar accident evidence must demonstrate a "close" degree of similarity when the evidence is offered to show the existence of a dangerous condition or defect. *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993). Even if the requisite degree of

similarity is established, the evidence may be excluded under Federal Rule of Evidence 403. *Id.*

After reviewing the documentary evidence offered by Dawson, the Court finds that all 15 farmers reported some degree of crop loss for their 2005 sweet potato crop. The evidence also supports Dawson's claim that there is a correlation between the application of Outlook and the crop losses experienced by most of the farmers. For example, Dawson offered evidence of the individual farmers' historic yields and the state's and parish's average yields. For the 2005 crop year, there was a marked decrease in the quantity and quality of sweet potatoes in fields treated with Outlook. In addition, five farmers applied Outlook to one sweet potato field and a different herbicide to an adjacent sweet potato field; the adjacent field had normal yields, but sweet potatoes treated with Outlook were damaged. Finally, Dr. Cannon, Dawson's expert, opined that the damage to sweet potatoes that he personally observed at several farms, and that other farmers described, is consistent with chemical injury caused by herbicides like Outlook.

Although the crop losses occurred in a variety of environmental conditions, the Court finds that this variance enhances, rather than undermines, the relevance of the other farmers' claims. If Dawson's defect theory was that Outlook only caused injury in specific conditions, such as with certain application rates or levels of irrigation, then the different conditions underlying the claims in this case would be material. However, Dawson's defect theory is that Outlook is unpredictable and cannot be applied safely, which is supported by evidence that Outlook was injurious in a variety of conditions.

Based on the foregoing, BASF's motion is GRANTED IN PART and DENIED IN PART. The Court finds that Dawson has met its burden of showing that most of the claims of other farmers are closely similar to its own. For the same reasons, the Court finds that the probative value of most

of the claims is not outweighed by the danger of unfair prejudice, confusion, or waste of judicial resources. *See* FED. R. EVID. 403.

Specifically, with respect to Thornhill's claim, the Court finds that evidence of his crop loss is relevant, even though he testified that Dawson's damages were not like his own, because Dawson's expert personally inspected Thornhill's crop and yield data and opined that Outlook caused the damage.

However, the Court finds that evidence of the claims of Shannon Gray ("Gray"), Jerry Vance ("Vance"), and Prine should be excluded from trial. Although Gray and Vance applied Outlook and reported losses, Dr. Cannon admitted that he needs additional information to conclude whether Outlook caused or contributed to the losses. With respect to Gray, Dr. Cannon stated, "[g]iven the limited data, I believe that Outlook could have been involved in Gray's loss." With respect to Vance, Dr. Cannon opined that "more information is needed to say convincingly that the yield reduction was due to the 4 ounce/a rate of Outlook. However, on the available information it does appear the most likely cause." [Doc. No. 241, Exh. D, pp.4–5]. The Court finds that the evidence on these two claims is too equivocal, and, therefore, its probative value is outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 403. Dr. Cannon also personally inspected Prine's crop and opined that Outlook caused the damage. However, Prine's crop was located in Arkansas, where Outlook was not approved for use. The Court finds that this distinction renders Prine's claim too dissimilar from Dawson's claim.

BASF's motion is GRANTED IN PART, and evidence of Gray's, Vance's, and Prine's claims are excluded from trial. BASF's motion is DENIED IN PART with respect to the other claims.

B.  **Motion in Limine to Exclude Evidence of BASF Brochures Unrelated to Use of Outlook on Sweet Potatoes [Doc. No. 149]**

BASF moves to exclude statements in a brochure comparing the herbicide at issue, Outlook, to another herbicide, Dual II Magnum. The brochure states that Outlook is more reactive, water soluble, and available for absorption in the root zone than Dual II Magnum. Dawson contends that these are the qualities that increase Outlook's potential for injury to sweet potatoes. BASF argued that the brochure is irrelevant because Dual II Magnum is not labeled for sweet potato use. In response, Dawson argued that Dual Magnum, which is labeled for sweet potato use, contains the same active ingredient as Dual II Magnum. Dawson, therefore, argued that the comparison of Dual II Magnum to Outlook is relevant.

In the October 15, 2008 Ruling, the Court questioned whether the chemical safener present in Dual II Magnum, but not in Dual Magnum, is significant and requested supplemental briefing demonstrating that Dual Magnum and Dual II Magnum are fair comparators.

In its supplemental memorandum, Dawson offered the affidavit of Dr. Cannon, its expert, who opined that Dual II Magnum is a fair comparator for purposes of comparison to Outlook. [Doc. No. 238]. Dr. Cannon reviewed the reference manual "Regulation of Enzymatic Systems Detoxifying Xenobiotis in Plants," the Dual II Magnum label, and a video produced by Syngenta, the manufacturer of Dual II Magnum. Dr. Cannon opined that the safener in Dual II Magnum, benoxacor, is a chemical that increases corn's ability to metabolize the active ingredient in Dual II Magnum. He also relied on a statement in the Dual II Magnum label that: "[u]se of Dual II Magnum herbicide will not provide improved crop safety on other labeled crops," and a statement in the Syngenta video that "Benoxacor does not alter the activity of partner broadleaf herbicides or the

excellent activity of S-Metolachlor on grasses." Based on the foregoing, Dr. Cannon opined that the safener does not affect the reactivity, solubility, or availability for absorption of S-Metolachlor, the active ingredient in both Dual II Magnum and Dual Magnum.

In response, BASF continues to oppose admission of the brochure. BASF first rehashes its argument that the brochure, which compares Outlook to a different herbicide for use on a different crop, is irrelevant and unduly prejudicial. [Doc. No. 243]. In consideration of this argument, the Court requested supplemental briefing demonstrating that Dual II Magnum, an herbicide not labeled for use on sweet potato crops, is a fair comparator to Dual Magnum, a herbicide that has been successfully used on sweet potato crops. Thus, BASF's rehashing of its earlier argument does not address the Court's concern.

BASF also argues that Dr. Cannon's methodology/opinion regarding whether Dual II Magnum is a fair comparator is unreliable/irrelevant, but offers no compelling argument or evidence showing that Dual II Magnum is not a fair comparator. BASF next argues that the effect of the safener is more complex than Dr. Cannon acknowledges or is qualified to realize. The Court has already considered and rejected BASF's attack on Dr. Cannon's qualifications. [Doc. No. 229, p. 22]. BASF has not made any additional compelling arguments that warrant excluding Dr. Cannon's testimony/opinion. Moreover, the Court finds that Dr. Cannon's opinion and the basis for his opinion reliably show that the safener present in Dual II Magnum does not undermine its comparison to Dual Magnum, and, by extension, to Outlook.

Finally, BASF contends that Dawson's continued "attempt to attribute scientific heft" to product literature is unduly prejudicial. The Court previously found that the product literature in this case is relevant: "BASF's statements in the brochure help to explain why Outlook caused the alleged

damage in this case—because Outlook is more active and water soluble, it is more available for absorption by roots in wet and dry conditions. The Court . . . finds that the statements in the brochure are relevant to Dawson's defect theory and not unduly prejudicial. BASF's Motion on this basis is DENIED." [Doc. No. 229, p.14]. The Court continues to find that the brochure at issue is relevant. The brochure claims that the active ingredient in Outlook renders it more reactive, water soluble, and available for absorption in the root zone than Dual II Magnum. BASF does not dispute the accuracy of these claims. Dawson contends that the qualities touted in the brochure are the qualities that increase Outlook's potential for injury to sweet potatoes. BASF's own claims regarding these qualities are probative of Dawson's defect theory.

BASF's motion in limine is DENIED.

### C. Motion to Exclude James Michael Cannon or, in the Alternative, Motion to Limit Testimony [Doc. No. 154]

BASF moves to exclude or limit the testimony of Dawson's expert, Dr. Cannon. The Court denied in part BASF's motion, but deferred ruling on the admissibility of those portions of Dr. Cannon's testimony/opinion relying on statements in BASF's brochure comparing Outlook to Dual II Magnum. [Doc. No. 229, p. 22]. Because the Court has ruled that the brochure is admissible, for the reasons stated previously, BASF's motion is DENIED.

### III. CONCLUSION

For the foregoing reasons, BASF's motions in limine [Doc. Nos. 144, 149, & 154] are GRANTED IN PART AND DENIED IN PART. BASF's Motion in Limine With Respect to Allegations Made by Non-Parties [Doc. No. 144] is GRANTED with respect to the claims of farmers Gray, Vance, and Prine, and evidence of those claims are excluded from trial. BASF's Motion is

DENIED with respect to the other claims. BASF's Motion in Limine to Exclude Evidence of BASF Brochures Unrelated to Use of Outlook on Sweet Potatoes [Doc. No. 149] is DENIED. BASF's Motion to Exclude James Michael Cannon or, in the Alternative, Motion to Limit Testimony [Doc. No. 154] is DENIED.

MONROE, LOUISIANA, this 18 day of December, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE